IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JACQUELINE K. BAKER                                                                           PLAINTIFF

      v.                                           CIVIL NO. 14-5116

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jacqueline Baker, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background**

Plaintiff protectively filed her application for DIB on September 17, 2010, alleging disability since June 16, 2006, due to back problems, irritable bowel syndrome, hearing loss, blood clots, and complications from spine surgery. (Tr. 13, 154). For DIB purposes, Plaintiff retained insured status through December 31, 2011. (Tr. 16). An administrative hearing was held on March 27, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 32-59).

By a written decision dated May 31, 2012, the ALJ entered a decision granting Plaintiff disability benefits from June 16, 2006, through March 16, 2011. (Tr. 16-22). The ALJ determined, however, a medical improvement occurred on March 17, 2011. (Tr. 23-24). The ALJ then found

since March 17, 2011, Plaintiff's degenerative disc disease of the lumbar spine status post-surgery, hearing loss, anxiety, and depression were severe impairments. (Tr. 22). After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 22-23). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work with the following limitations:

> [She] is able to occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds and occasionally balance, stoop, kneel, crouch and crawl. She can occasionally push and pull. The claimant cannot perform work that requires excellent hearing or more than occasional telephone conversations. She will require the opportunity to stand if sitting for more than 30 minutes to stretch briefly without leaving the work station. She can perform work limited to simple, routine, and repetitive tasks, involving only simple work-related decisions, with few, if any, workplace changes, and no more than incidental contact with co-workers, supervisors and the general public. (Tr. 24).

With the help of a vocational expert (VE), the ALJ determined Plaintiff could not perform her past relevant work (PRW), but could perform the representative occupations of cleaner-housekeeper/maid, package mail sorter, and merchandise marker or price marker. (Tr. 25-26). The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 26).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on February 7, 2014. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). The parties consented to the jurisdiction of this Court on April 15, 2014. (Doc. 5). Both parties have filed appeal briefs, and the case is ready for decision. (Docs. 11, 13).

**II. Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.

## III. Discussion

On appeal, Plaintiff argues (1) the ALJ did not properly develop the record, (2) the RFC assessment is not based on substantial evidence, and (3) the ALJ improperly evaluated Plaintiff's credibility. (Doc. 11 at pp. 2-8).

### A. Development of the Record

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not

required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

An ALJ is required to obtain additional evidence "only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." Johnson v. Astrue, 627 F.3d 316, 320 (8th Cir. 2010).  In addition to Plaintiff's treatment notes, the record includes a mental evaluation from Dr. Gene Chambers, a consulting psychologist, mental and physical RFC assessments from non-examining consultants, a Functional Capacity Evaluation, and a medical opinion statement from Dr. James Blankenship, Plaintiff's treating neurosurgeon. (Tr. 737-751, 1173-1179, 1185-1189, 1195-1212). The record was sufficiently developed, and there was substantial evidence for the ALJ to make a determination without further information. See e.g., Dunahoo v. Apfel, 241 F.3d 1033, 1039-1040 (8th Cir. 2001).

Accordingly, the undersigned finds no basis for remand on this issue.

### B. Credibility

Plaintiff argues the ALJ did not identify good reasons for discounting her allegations of disabling pain, and did not meaningfully apply the Polaski factors. (Doc. 11 at pp. 5).

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a

whole. Id. It is well established that "credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966 (8th Cir. 2003)**.**

The ALJ addressed the Polaski factors in the written decision, and found Plaintiff's subjective complaints only partially credible because she regularly spends time with friends, and she earned an associate's degree with a 3.0 GPA despite her allegations of disabling mental conditions. Additionally, the ALJ noted that evidence in the record showed her mental and physical conditions have improved with treatment. (Tr. 23-25). These were valid reasons for the ALJ to partially discount Plaintiff's subjective complaints. See e.g., Cox v. Barnhart, 471 F.3d 902 (8th Cir. 2006).

Accordingly, the undersigned finds the ALJ's credibility analysis is based on substantial evidence.

### C. RFC Assessment

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393. F.3d 798, 801; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). A claimant's RFC is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). Even though the RFC assessment draws from medical sources, it is ultimately an administrative determination. 20 C.F.R.

§§ 416.927(e)(2), 416.946; Cox v. Astrue, 495 F.3d 614 (8th Cir. 2007). In evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively, but should "consider at least some supporting evidence from a professional." Lauer, 245 F.3d at 704.

The record shows Plaintiff had a work-place accident in 2006 and suffered a serious back injury. (Tr. 566). Plaintiff underwent a series of back surgeries through March 2010 to repair an annular tear and herniated discs. (Tr. 523-529, 587-588, 616, 664-668, 888-889, 979-983). After her final surgery in March, treatment notes show Plaintiff's condition improved.

In May 2010, Dr. Blankenship noted Plaintiff was "about to turn a corner." (Tr. 771). At post-surgery check-ups with Dr. Fred Smardo, her treating nephrologist, Plaintiff reported her back pain was reduced, and Dr. Smardo noted Plaintiff's depression, urinary problems, and insomnia were improved. (Tr. 773, 1163). In July 2010, Dr. Blankenship noted "it is amazing she is doing as well as she is" after her multiple surgeries and prior setbacks, and he recommended Plaintiff continue with physical therapy. (Tr. 754).

Dr. Blankenship referred Plaintiff for a Functional Capacity Evaluation in August 2010. (Tr. 737-751). During the evaluation, Plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently; frequently walk and reach overhead; and occasionally climb stairs, stoop, kneel, push, and pull. (Tr. 737, 739). Overall, Plaintiff was assessed as capable of light work. (Tr. 738). In August 2010, Dr. Blankenship prescribed sertraline for Plaintiff's depression and encouraged aggressive physical therapy, but noted Plaintiff was not ready to return to work. (Tr. 731). Plaintiff underwent an MRI of her spine on September 10, 2010, which Dr. Blankenship opined was a "stable postoperative MRI." (Tr. 673-674). At a follow-up visit on September 30, 2010, Dr. Blankenship noted "structurally everything is fine." (Tr. 674).

In October 2010, Dr. Smardo prescribed medication for hypothyroidism, continued warfarin to prevent pulmonary embolisms, and recommended continuing with a rehabilitation and exercise program. (Tr. 1162). Notes from Plaintiff's post-surgery physical therapy indicate Plaintiff was doing better. (Tr. 1051). Dr. Ronald Crow, a non-examining consultant, submitted a physical RFC assessment in November 2011 and opined Plaintiff could perform the full range of light work. (Tr. 1173-1179).

In February 2011, Plaintiff was examined by Dr. Gene Chambers, a consulting psychologist. (Tr. 1185-1189). According to Dr. Chambers, Plaintiff had experienced anxiety and depression since childhood, and, although Dr. Blankenship prescribed sertraline, never sought any significant mental health treatment. (Tr. 1185-1186). As the ALJ discussed, Dr. Chambers opined Plaintiff could communicate and interact in a socially adequate manner, but became anxious in crowds of people, which restricted her ability to concentrate, persist, and complete tasks. (Tr. 1189). On February 28, 2011, Dr. Cheryl Woodson-Johnson, a non-examining consultant, submitted a mental RFC assessment and Psychiatric Review Technique. (Tr. 1196-1212). Based on Plaintiff's "mild anxiety and disturbance in mood," Dr. Woodson-Johnson anticipated Plaintiff could "engage in a wide range of mentally demanding tasks despite the presence of anxiety." (Tr. 1199).

Plaintiff saw Dr. Blankenship again on March 17, 2011, for her one-year follow-up. (Tr. 1293-1295). Plaintiff reported she was progressing with her pool therapy and physical therapy at home. (Tr. 1293). X-rays of Plaintiff's spine looked good and showed no persistent neural compression, and Dr. Blankenship determined Plaintiff was at maximum medical improvement,

although she should continue to take Lyrica and may require intermittent physical therapy. (Tr. 1293-1294). He opined:

> [She] is able to work at light duty with a 10 pound permanent weight lifting restrictions. If she is at a job that requires sitting for prolonged periods of time, she should be allowed the opportunity to get up and stretch. She certainly should not do anything that involves any twisting or bending at the waist. Overall, I find that the recommendations of the functional capacity evaluation are valid. (Tr. 1294).

On March 29, 2011, Dr. Blankenship added an addendum to his earlier opinion that said, "[her] permanent restrictions are that she is able to frequently lift up to 10 lbs. and occasionally lift up to 20 lbs." (Tr. 1296). Rhonda Findley, a nurse in Dr. Blankenship's clinic, noted on June 27, 2011, Plaintiff has been "doing quite well" handling situational depression and anxiety since her surgery. (Tr. 1297). Dr. Blankenship recommended weaning off the medication, but Plaintiff stated she "feels that the sertraline certainly helps and does not feel that she could stop taking it." (Tr. 1297).

Plaintiff was referred to a free health clinic for primary care treatment, where sertraline was continued, and notes show Plaintiff's prognosis was "good." (Tr. 1243-1257, 1297). At a follow-up exam on October 25, 2011, notes indicate Plaintiff had been taking ibuprofen for stiffness in her neck and shoulder, but was not currently using ibuprofen or other pain medications. (Tr. 1221). Later exam notes show no treatment for back pain or other musculoskeletal conditions. (Tr. 1236-1242).

Plaintiff argues the ALJ erred by relying "almost entirely on the opinion of Dr. Blankenship." (Doc. 11 at p. 6). While the ALJ's explanation of the evidence was brief, he appropriately gave significant weight to Dr. Blankenship and Dr. Chambers, and accounted for all the evidence in the record including Plaintiff's credible testimony, such as having

limited hearing. (Tr. 25). An ALJ is not required to discuss every piece of evidence in the record so long as the decision is consistent with the medical evidence. See Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010); see also Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") The RFC assessment mirrors Dr. Blankenship's opinions and provides accommodations for all of Plaintiff's conditions. Based upon the medical opinions and Plaintiff's extensive medical records, the ALJ's conclusions are well supported by the medical evidence.

Accordingly, the undersigned finds the ALJ's RFC determination is based on substantial evidence.

**D. Step Five**

At the hearing, the ALJ posed to following hypothetical to the VE:

Let me ask you to consider someone of the claimant same age, education, and work experience who can do [no] more than light work. . . . Occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally push and pull; no work that requires excellent hearing or more than occasional phone conversations. . . . Work is limited to simple, routine, and repetitive tasks involving only simple work related decisions with few, if any, workplace changes; and no more than incidental contact with co-workers, supervisors and the general public. . . . Are there any other jobs available?

(Tr. 52-53). In response, the VE testified Plaintiff could perform the representative occupations of cleaner-housekeeping/maid, package mailer sorter-routing clerk/conveyer belt, and merchandise marker or price marker. (Tr. 53-54). Such testimony, based on a hypothetical question consistent with the record, constitutes substantial evidence. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

Accordingly, the undersigned finds the ALJ's step five determination is based on substantial evidence.

**IV. Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. Plaintiff's Complaint is dismissed with prejudice.

Dated this 3rd day of September, 2015.

s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE